EDMUND DUROSE v. ST. PAUL CITY RAILWAY COMPANY.[1]

THOMAS DUROSE v. ST. PAUL CITY RAILWAY COMPANY.

GEORGE DUROSE v. ST. PAUL CITY RAILWAY COMPANY.

July 19, 1900.

Nos. 12,204—(201).

**Street Railway—Collision.**
These are personal injury actions. *Held*, in each case:

**Negligence and Contributory Negligence.**
1. That the finding of the jury to the effect that the defendant was guilty of negligence, and the plaintiff was not chargeable with contributory negligence, is sustained by the evidence.

[1] Reported in 83 N. W. 397.

**Verdict Excessive.**

2. That the amount of damages in one of the cases is excessive.

Three actions in the district court for Ramsey county, to recover $5,030, $2,000 and $2,500, respectively, for personal injuries. The cases were tried together before Kelly, J., and a jury, which rendered a verdict in each case in favor of plaintiff. From an order in each case denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed as to Edmund Durose and George Durose. Reversed as to Thomas Durose.

*Munn & Thygeson* and *J. P. Kyle,* for appellant.

*McDonald & Kelly,* for respondents.

START, C. J.

On the afternoon of July 7, 1899, the plaintiff Edmund Durose was driving a team of horses attached to a lumber wagon northerly along St. Peter street, in the city of St. Paul. His son Thomas, aged fifteen years, was sitting in the wagon beside him, and his son George, aged twelve years, was sitting behind them. While he was in the act of crossing the defendant's street-car tracks on Fourth street, one of its cars struck the wagon, tore off the hind wheel, and threw the plaintiff and his two sons to the ground, whereby each was injured. Each brought an action against the defendant to recover damages for his injuries on the ground of its alleged negligence in the premises. The three actions were tried together, as the injuries of all of the plaintiffs resulted from the same accident, and the alleged liability of the defendant depended on the same evidence. Separate verdicts, however, were taken in each case. The jury awarded the father $900, his son Thomas $700, and his son George $400. The defendant appealed from the order of the trial court denying its alternative motion in each case for judgment notwithstanding the verdict, or for a new trial.

The defendant here contends that the evidence failed to show negligence on its part, but did conclusively show negligence on the part of the father, Edmund Durose, and that the damages were excessive. If the finding of the jury is sustained as to the father, it certainly is as to his sons, except as to the question of damages.

80 M.—33

We are of the opinion that the verdict in favor of the father is fairly sustained by the evidence, both as to the defendant's alleged negligence and his own; hence it is immaterial whether the court erred or not in its instruction to the jury to the effect that there was no evidence that either of the sons was negligent.

It can serve no practical purpose to state and analyze in detail the evidence in support of the conclusion we have reached. It is an admitted fact in the case that the plaintiff's team stopped when their heads were from six to eight feet from the track, and the evidence is practically conclusive that he looked both ways for the approach of cars, and saw one coming down Fourth street from the west. He testified, in effect, that immediately thereafter the current was turned off the car, the speed slackened, as if to invite him to cross, and, when the car was from one hundred forty to one hundred sixty feet from him, he drove upon the track, and, when the head and shoulders of his team were on the track, the current was turned on, the speed of the car increased, and his wagon struck, as stated.

The defendant claims that the plaintiff's evidence was improbable. It produced on the trial some nine witnesses, who testified that the plaintiff drove in front of the car when it was only from ten to twenty feet away, the average estimated distance being less than fifteen feet. It does not seem quite reasonable that the plaintiff, after taking the precaution to stop his team when he came to the crossing, and to look for the approach of cars, would, when he saw one coming only fifteen feet away, deliberately drive onto the track in front of it; nor does it seem quite probable that, if the car was one hundred forty to one hundred sixty feet away when his horses were on the track, its speed was so great as to hit his wagon before he could get across. We are not to be understood as questioning the candor or truthfulness of any of the witnesses, but as suggesting that they must have been mistaken in their estimates of distances. Experience teaches that witnesses of the highest character are not infrequently exceedingly inaccurate in their estimates of distances, periods of time, and rates of speed. It follows that mathematical arguments based on estimated distances are only

seemingly conclusive. Now, in this case the question of the negligence of the respective parties depends very largely upon the fact where the car was when the plaintiff attempted to cross the tracks. The evidence is conflicting on this question, and our conclusion, based upon a consideration of the whole record, is that it was one clearly for the jury, who saw and heard the witnesses.

The defendant also urges that the damages are excessive. They are not so as to the father and his son George, but as to the boy Thomas we are of the opinion that they are within the rule of Meeks v. City of St. Paul, 64 Minn. 220. The attending physician testified that there were a number of abrasions on the hip of Thomas where the skin had been rubbed off, which caused lameness and soreness for a time, but that he never discovered any disease of the joint itself. He gave him liniment to put on the injured leg. He also gave this evidence:

"Q. Well, now, how long did you treat him, did you say? A. I didn't do much for him. When I was going to see the other boy, I asked about him, and they said he was getting along nicely. Q. Have you seen him since that time? A. Yes. I examined him one day last week. Q. What condition did you find him in at that examination, and when was it? * * * A. Nothing very definite. He complained of pain on pressure there. * * * As I pressed the thigh bone, driving the head in, he complained of pain. Q. Well, if that pain was actual, doctor, what would that indicate,— that there was inflammation there or not? A. The hip is so fleshy a point, of course, that, unless the symptoms are very marked, we can't form any definite conclusion. It might have been due simply to the pressure, or it might have been due to a natural inflammation in the hip joint. * * * Q. Now, if that is inflammation of that joint, and it having existed from the 7th of last July down to the present time, what would you say with regard to the probable time of recovery? * * * A. If there should be an inflammation that had run that length of time, it would be in a subacute or chronic state, and that would mean that it would be months or years, or possibly never get well. Joint and bone diseases are always very slow in recovery."

It is to be noted that the doctor did not venture an opinion that there was "any inflammation that had run any length of time." It is quite conclusive from the attending physician's evidence that the injuries of Thomas were not of a serious or permanent char-

acter. They clearly were not as serious as the injuries which his brother George sustained, who was awarded only $400. The amount of $700 damages to Thomas was so clearly excessive as to call for a modification or a new trial of his case.

It is therefore ordered that the order appealed from in the cases of Edmund and George Durose, respectively, be affirmed, but that in the case of Thomas Durose it be reversed, and a new trial granted, unless the plaintiff, within twenty days after the filing of the mandate in the district court, files therein his consent to a reduction of the verdict to $400 and interest from date of trial, in which case the district court will enter judgment for the plaintiff for the amount of the verdict as thus reduced.